# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Vanoosting v. Sellars, 2012 IL App (5th) 110365**

---

| | |
|---|---|
| Appellate Court Caption | KATHRYN L. VANOOSTING, Plaintiff-Appellant, v. CARL SELLARS, Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-11-0365 |
| Filed | June 14, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's testimony that she did not seek further medical treatment for the injuries she suffered in a vehicular collision for three years prior to trial because she did not have insurance or the ability to pay for such treatment was relevant to her claim for future medical expenses and to rebut the defense theory that she no longer had pain and suffering, and the trial court erred in excluding that testimony, especially when it could have been restricted to its proper scope and purpose; therefore, the cause was remanded for a new trial. |
| Decision Under Review | Appeal from the Circuit Court of Union County, No. 08-L-1; the Hon. Mark M. Boie, Judge, presiding. |
| Judgment | Reversed; cause remanded with directions. |

| Counsel on Appeal | Stephen W. Stone, of Howerton, Dorris & Stone, of Marion, for appellant. |
| | |
| | James B. Bleyer, of Bleyer & Bleyer, of Marion, for appellee. |
| | |
| Panel | JUSTICE SPOMER delivered the judgment of the court, with opinion. Justices Welch and Chapman concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiff, Kathryn L. Vanoosting, appeals from the August 22, 2011, order of the circuit court of Union County which denied her motion for a new trial after a jury verdict in her favor on her complaint for money damages against the defendant, Carl Sellars. On appeal, the plaintiff argues she is entitled to a new trial because: (1) the circuit court prohibited her from testifying that she did not seek further treatment for her injuries in the three years prior to trial because she did not have health insurance, and (2) a zero award for loss of a normal life cannot be sustained by the evidence at trial, especially in light of argument by defense counsel that seeking compensation for loss of a normal life and pain and suffering is "double dipping." For the following reasons, we reverse and remand with directions that the plaintiff be afforded a new trial.

¶ 2                                          FACTS

¶ 3    The plaintiff filed a negligence complaint against the defendant on January 3, 2008, alleging that she was injured when the defendant rear-ended her vehicle on March 6, 2006. In the complaint the plaintiff sought damages for, *inter alia*, past and future pain and suffering, disability, loss of a normal life, and loss of earning capacity. On August 23, 2010, the defendant filed an admission of negligence, and the cause proceeded to trial on the issue of damages only. The circuit court declared a mistrial based on statements made by a juror in chambers,[1] and a second trial commenced on January 24, 2011, wherein a jury was impaneled and sworn and *voir dire* conducted. On January 25, 2011, the jury heard opening statements and the plaintiff presented her case in chief. During her cross-examination, defense counsel elicited from her that she had not been to the doctor for three years prior to

_____

[1]A docket entry entered that date states: "Juror Hight approaches bailiff and states he wishes to speak w/ct and counsel. Ct and counsel interviews Juror Hight in chambers. Counsel make[s] arguments. Ct excuses Juror Hight and declares a mistrial." No other information is included in the record as to the court's reasons for declaring a mistrial.

trial. On redirect, the plaintiff's counsel asked her if she had health insurance, either at the time of the wreck or presently, and she answered "no." After the plaintiff rested her case in chief, the circuit court declared another mistrial. The basis for the mistrial is set forth in the following docket entry:

> "Π Atty's 'health insurance' question posed to the Π in chambers w/ counsel. Ct hears arguments of counsel. Δ Atty requests that mistrial be ordered while Π Atty argues that jury should be instructed. Ct makes its findings regarding the issue and declares a mistrial."

¶ 4 Another trial was scheduled for April 25, 2011. On February 4, 2011, the plaintiff filed a supplemental motion *in limine* seeking to introduce evidence that she is not covered by health insurance in response to the defendant's claims that she has sought little or no medical treatment in the last three years. In the alternative, the supplemental motion *in limine* requested that the defendant be barred from any claim or argument regarding the lack of medical treatment for three years. By a notation made on the supplemental motion *in limine* following a pretrial conference on April 13, 2011, it appears that the circuit court denied the plaintiff's request to introduce evidence that she did not have health insurance but granted the plaintiff's request that the defendant be barred from claiming or arguing the plaintiff has sought little or no medical treatment in three years.

¶ 5 Before the third trial commenced on April 26, 2011, the circuit court held another in-chambers conference with counsel for both parties. The plaintiff's counsel asked for a clarification on the circuit court's ruling on the supplemental motion *in limine*. The following colloquy occurred:

> "[Plaintiff's counsel]: I'm not clear on the ruling–or on your ruling of my motion that I filed subsequent to the last trial asking leave of the Court to have [plaintiff] testify that she does not have health insurance as the explanation for why she hasn't been back to the doctor in the last three years.

> THE COURT: And I think we discussed this the other day, and just didn't make the record. I'm going to stay away from the health insurance issue because–and I think [defense counsel] said–I mean, basically, the only question he's going to ask is, when was the last time you went to the doctor, and not elaborate on why, when, any of those issues. Correct?

> [Defense counsel]: That's right. I mean, I want to be very circumspect.
> ***

> THE COURT: Well, and you know, obviously, I want to tread lightly on that. We've been down this road before. If it becomes–and I don't think [defense counsel] is going to, but if it becomes an issue, I'll revisit it and ask, and we'll discuss it."

¶ 6 The plaintiff's counsel then reiterated his concern that even the mention of the fact that the plaintiff had not been to the doctor in three years may cause the jury to infer that she is no longer hurt or in pain and that the plaintiff should be able to explain her reasons for not seeking further treatment. The plaintiff's counsel informed the court that he planned to make an offer of proof on the issue at the appropriate time during trial.

¶ 7 Subsequently, the defendant objected to the plaintiff's tendered instruction No. 17, which listed the potential elements of damage the jury could consider. See Illinois Pattern Jury Instructions, Civil, No. 30.01 (2011). The defendant objected to future medical expenses, future pain and suffering, and future loss of a normal life as potential elements of damage, arguing that there was no evidence upon which the jury could base a future award. In response, the plaintiff argued that at least one treating provider made recommendations for future treatment. During the instruction conference, there was another discussion about how to elicit the plaintiff's intent to seek future treatment, the defendant's right to point out the three-year gap in treatment, and the plaintiff's need to explain her reason for not seeking the recommended treatment before. The circuit court gave plaintiff's instruction No. 17 to the jury over the defendant's objection, but admonished the plaintiff's counsel that while he could elicit from the plaintiff that she plans to seek future medical treatment, she could not qualify her intent based on whether she would receive a future award and could not explain her failure to seek such treatment based on a lack of medical insurance.

¶ 8 During opening statements, defense counsel made the following remark regarding the plaintiff's lapse in treatment:

"But the last doctor whom she saw was more than three years ago, and that–I believe the evidence is going to show that the last doctor whom she saw was Dr. Alam, and that was on April 2, 2008. He told her to come back if she had a problem. No more. So this–today's April, so there's been no medical treatment for three years."

¶ 9 The plaintiff's treating providers testified via video evidence deposition or the reading of evidence deposition testimony to the jury. During his cross-examination of each of the providers, defense counsel asked whether the plaintiff had been back to treat with that provider in the three years prior to trial, despite their availability to provide further treatment to the plaintiff. The plaintiff testified that after the accident she developed pain in her neck, shoulder, arms, and back. She sought treatment at the Carbondale Clinic and was referred to physical therapy at Union County Hospital. Six weeks after the accident, the plaintiff requested a clean bill of health from her physician at the Carbondale Clinic because it was required in order to begin work as a substitute carrier for the United States Postal Service. Although she had obtained the clean bill of health, she had already begun treating with a specialized dentist for jaw issues that surfaced after the accident, and he also referred her for more physical therapy due to muscle spasms in her upper back and neck that he testified were interfering with his treatment of her jaw problems. On cross-examination, the plaintiff's specialized dentist testified that he could not rule out a preexisting condition as a predicate for the jaw problems the plaintiff was experiencing.

¶ 10 The plaintiff testified about the pain she experienced which interfered with her daily activities. She tried to endure the pain for a period of a year but then sought further treatment and physical therapy in 2008. At this point in the plaintiff's testimony, the plaintiff's counsel posed the following question to the plaintiff in the presence of the jury:

"And from the two year anniversary of this wreck, forward–and I don't want to know why, because we can't tell why–have you had obstacles that prevent you from seeking the medical care you desire?"

¶ 11    The plaintiff answered affirmatively, at which point defense counsel objected and the circuit court instructed the jury to disregard the question. Outside of the presence of the jury, the plaintiff made an offer of proof. In the offer of proof, the plaintiff testified that she did not have health insurance at the time of the accident. She had insurance on her car that would pay for medical treatment for two years following the accident. After the two years expired, she did not seek further treatment because she did not have health insurance and did not have the ability to pay for it. She earns $200 a week and gets some help from her son. She takes care of her parents with their social security benefits. She testified that if the jury awards her damages for future medical expenses, she plans to seek further physical and/or water therapy to treat her neck and back pain. This concluded the plaintiff's offer of proof.

¶ 12    On cross-examination, defense counsel elicited the plaintiff's admission that she had not received any medical treatment since June of 2008. The plaintiff rested and the defense did not present a case in chief. During closing arguments, the plaintiff's counsel requested that the jury award the plaintiff $18,000 for past medical bills, $12,000 for future medical bills, $30,000 for pain and suffering, past and future, and $30,000 for loss of a normal life, past and future, for a total of $90,000. During his closing, defense counsel made the following statement regarding the request for future medical expenses:

"Now, one thing that I am very, very sensitive about, [plaintiff's counsel] said 30, 30, 30. Thirty about the medical, for no medical for three years. There is a medical–the last medical, you heard that. He wants $12,000 for future medical, $18,000 for past medical."

¶ 13    Defense counsel then made the following statement regarding the plaintiff's request for damages for pain and suffering and loss of a normal life:

"I asked her–[plaintiff's counsel] says 30 for pain and suffering and 30 for loss of normal life. Well, what did I ask her: Whatever you can't do, is it because of your pain. She said yes. So, am I wrong? Am I misunderstanding it? If you get $30,000 for pain and suffering, why should you get $30,000 for loss of a normal life? You talk about double-dipping. I mean, that is double-dipping. No question about it. No question about it."

¶ 14    The plaintiff's counsel objected, arguing that the jury instruction contains elements of damage for both pain and suffering and loss of a normal life and that defense counsel's suggestion that this amounts to "double-dipping" is inappropriate. The circuit court did not make a particular ruling on the plaintiff's objection and did not give an instruction to the jury, but did address defense counsel in the presence of the jury, stating:

"Basically, I believe you can make your argument as what you believe would be fair and reasonable as to loss of normal life and pain and suffering. I think to call it double-dipping may be confusing to the jury. I think you can make your argument. *** I think the jury needs to understand that there are three things that–***. And we'll get to that when I read the instructions."

¶ 15    Defense counsel then stated:

"No question, double-dipping, that is kind of a slang term. Maybe I shouldn't use it. You heard the evidence. The inability to do certain things because of the pain. There is [*sic*] two elements to that. It is up to you to determine if they are duplication or what they are."

¶ 16    After closing arguments, the jury was instructed, *inter alia*, as follows:

"Whether a party is insured or not insured has no bearing on any issue that you must decide. You must refrain from any inference, speculation, or discussion about insurance.

If you find for the plaintiff, you shall not speculate about or consider any possible sources of benefits the plaintiff may have received or might receive. After you have returned your verdict, the court will make whatever adjustments are necessary in this regard." Illinois Pattern Jury Instructions, Civil, No. 3.03 (2011).

¶ 17    It appears from the record that this instruction was marked as the plaintiff's tendered instruction No. 10 and was given over objection. However, the record does not reflect the nature of the objection.

¶ 18    As per the circuit court's ruling in the instruction conference, the circuit court also instructed the jury to consider the following elements of damage: (1) past and future medical expenses, (2) past and future pain and suffering, and (3) past and future loss of a normal life. The circuit court also gave the following instruction with regard to the definition of loss of a normal life:

"When I use the expression 'loss of a normal life', I mean the temporary or permanent diminished ability to enjoy life. This includes a person's inability to pursue the pleasurable aspects of life." Illinois Pattern Jury Instructions, Civil, No. 30.04.02 (2011).

¶ 19    The jury returned a verdict in the amount of $30,286.46, itemized as follows: (1) $18,286.46 for medical expenses, past and future, (2) $12,000 for pain and suffering, past and future, and (3) $0 for loss of a normal life. We note that the award for medical expenses matches the plaintiff's exhibit itemizing her past medical expenses, suggesting that no award was made for future medical expenses. On May 9, 2011, the circuit court entered a judgment on the jury's verdict.

¶ 20    On May 25, 2011, the plaintiff filed a posttrial motion requesting a new trial. The plaintiff argued that she was deprived of a fair trial when the circuit court refused her testimony that she did not seek medical treatment in the years before trial due to a lack of medical insurance. In addition, the plaintiff argued that the jury's award of $0 for loss of a normal life was against the manifest weight of the evidence and a product of improper argument by defense counsel. After full briefing and argument of counsel, the circuit court entered an order denying the plaintiff's posttrial motion on August 22, 2011. On August 30, 2011, the plaintiff filed a timely notice of appeal.

¶ 21                                   ANALYSIS

¶ 22    We begin our analysis with a statement of our standard of review. The decision of the circuit court to deny a new trial is within its discretion and will not be reversed absent an abuse of that discretion. *Stricklin v. Chapman*, 197 Ill. App. 3d 385, 387-88 (1990). With the standard of review in mind, we turn first to the plaintiff's argument that she is entitled to a new trial based on the circuit court's exclusion of her testimony that she did not seek further treatment for her injuries in the three years prior to trial because the medical payments coverage on her automobile insurance had expired and she did not have health insurance or the ability to pay for further treatment. Although evidence of the existence of health

insurance is generally inadmissible to prove liability, such evidence may be admitted to prove relevant issues raised in a case. *Tomaszewski v. Godbole*, 174 Ill. App. 3d 629, 635 (1988). In other words, the general rule that the existence of health insurance is inadmissible is based on a traditional relevance analysis.

¶ 23       According to Illinois Rule of Evidence 401, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Here, the plaintiff's testimony that she did not seek further treatment due to her lack of insurance is of consequence to her claim for future medical expenses and to the rebuttal of the defense theory that she no longer has pain and suffering or a need for treatment due to her lack of treatment in the last three years. Accordingly, we find that the plaintiff's proffered testimony is relevant under Illinois rules.

¶ 24       Having determined the relevance of the testimony, we are mindful of Illinois Rule of Evidence 403, which provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011). We do not find such to be the case. Although we are mindful of the potential impact that the plaintiff's financial position may have on the sympathies of the jury, we find that as provided for in Illinois Rule of Evidence 105 (Ill. R. Evid. 105 (eff. Jan. 1, 2011)), the court, upon request, could have restricted the evidence to its proper purpose and scope and instructed the jury accordingly, in this case by appropriately tailoring pattern instruction 3.03 to the unique facts of this case. See *Duffin v. Seibring*, 154 Ill. App. 3d 821, 831 (1987) (holding that a trial court faced with a unique factual situation or point of law not addressed by the pattern instructions should provide the jury with modified versions of the pattern instructions which accurately state the law). For all these reasons, we find that the plaintiff's testimony was admissible and that the trial court erred in excluding it.

¶ 25       Although we have found that the circuit court erred in excluding the plaintiff's testimony, we recognize that an error in the exclusion or admission of evidence does not require reversal for a new trial unless one party has been prejudiced or the result of the trial has been materially affected. *Stricklin*, 197 Ill. App. 3d at 388. However, in a case close enough on the facts that a jury could easily decide either way, any substantial error which might have tipped the scales calls for a reversal for a new trial. *Id.* Here, as in *Stricklin*, 197 Ill. App. 3d at 388, the contested testimony relates directly to the central controversy of the case, namely, the extent of the plaintiff's damages and whether the plaintiff is entitled to damages for future pain and suffering, medical expenses, and loss of normal life. This is especially true in light of defense counsel's strategy of repeatedly highlighting the fact that the plaintiff had no treatment for her injuries in the three years prior to trial in his cross-examination of the witnesses and in his closing argument. Because of the closeness of the evidence, we cannot say that the circuit court's error in excluding the testimony had no effect on the outcome of the case, and we must remand this cause for a retrial in the interest of justice. See *Stricklin*, 197 Ill. App. 3d at 388.

¶ 26       Having found that the circuit court's failure to admit the plaintiff's testimony regarding

her lack of health insurance to explain her lack of treatment over the three years prior to trial entitles the plaintiff to a new trial, we need not determine whether the jury's verdict of zero for the loss of a normal life, in light of the closing argument by defense counsel that seeking compensation for loss of a normal life and pain and suffering is "double dipping," was reversible error. We find it sufficient to point out that although it is not necessarily reversible error for a jury to award damages for pain and suffering and no damages for loss of a normal life, especially when the evidence consists of the subjective testimony of the plaintiff (see *Stift v. Lizzadro*, 362 Ill. App. 3d 1019, 1029 (2005)), Illinois law does provide that these are separate elements of damage, as per the jury instructions (see Illinois Pattern Jury Instructions, Civil, No. 30.04.02 (2011)), and defense counsel's statement that to request an award on both elements amounts to "double dipping" is an improper legal argument, and an objection to such a comment should be sustained. See *Lounsbury v. Yorro*, 124 Ill. App. 3d 745, 749 (1984) (an objection to argument by counsel that is inconsistent with the jury instructions is properly sustained).

¶ 27                                                    CONCLUSION

¶ 28        For the foregoing reasons, the judgment of the circuit court of Union County is reversed, and the cause is remanded for a new trial.

¶ 29        Reversed; cause remanded with directions.